SHAWN MARTIN                                          CIVIL ACTION

VERSUS                                                      NO. 15-4650

N. BURL CAIN                                          SECTION: "F"(1)


## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### State Court Factual and Procedural Background

Petitioner, Shawn Martin, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On April 5, 2008, Martin and co-defendants Michael Jacobs and Joshua Thomas were charged by a bill of information with two counts of armed robbery (counts one and two) and one count of attempted armed robbery (count three).[1] On February 22, 2010, the State proceeded to trial against petitioner as to Count Two only.[2] Petitioner waived his right to trial by jury and proceeded to be tried by the court. The trial judge found petitioner guilty as charged as

---

[1] State Rec., Vol. 1 of 8, Bill of Information dated April 15, 2008.
[2] State Rec., Vol. 1 of 8, minute entry dated February 22, 2010; transcript of February 22, 2010, pp. 10-11.

to count two, and the state entered a *nolle prosequi* as to counts one and three.[3]  On February 26, 2010, the trial court sentenced petitioner to a term of imprisonment of forty (40) years at hard labor.[4]  On that date, the state filed a multiple offender bill of information charging petitioner as a double offender.[5]  On May 6, 2010, the trial court found petitioner guilty of being a second felony offender and vacated the previous sentence of forty (40) years.  The trial court resentenced petitioner as a double offender to a term of imprisonment of fifty-five (55) years at hard labor without the benefit of probation or suspension of sentence.[6]  On May 24, 2011, the Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence but amended petitioner's habitual offender sentence to reflect it was imposed without the benefit of parole.[7]  The Louisiana Supreme Court denied writs without stated reasons on February 3, 2012.[8]  The United States Supreme Court denied petitioner's petition for writ of certiorari on October 1, 2012.[9]

On September 26, 2013, petitioner filed an application for post-conviction relief with the state district court raising three claims for relief: (1) counsel failed to introduce into evidence surveillance video of the individual the victim claimed approached him outside Boomtown Casino and surveillance video showing petitioner using cash to purchase merchandise at Foot Locker; (2) counsel failed to conduct pretrial investigation into the case and interview Officer Tammy Dore, Detective Gary Barteet and Stephen Charles and call them to testify at trial; (3) counsel failed to afford Martin his constitutional right to procedural due process during the multiple bill hearing.[10]

---

[3] State Rec., Vol. 1 of 8, minute entry dated February 22, 2010; State Rec., Vol. 1 of 8, transcript of February 22, 2010, p. 65-66.
[4] State Rec., Vol. 1 of 8, commitment dated February 26, 2010; State Rec., Vol. 1 of 8, transcript of February 26, 2010.
[5] State Rec., Vol. 1 of 8, multiple bill dated February 26, 2010.
[6] State Rec., Vol. 1 of 8, minute entry dated May 6, 2010; State Rec., Vol. 1 of 8, transcript of May 6, 2010.
[7] State v. Martin, 70 So. 3d 41 (La. App. 5th Cir. 2011); State Rec., Vol. 1 of 8.
[8] State v.Martin, 79 So. 3d 1023 (La. 2012) (Mem.); State Rec., Vol. 8 of 8.
[9] Martin v. Louisiana, 133 S. Ct. 142 (2012); State Rec., Vol. 1 of 8.
[10] State Rec., Vol. 3 of 8.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner

On November 14, 2013, the state district court denied claim three on state procedural grounds.[11] On February 20, 2014, the state district court denied claims one and three on the merits.[12]

Petitioner sought review of his post-conviction claims in two separate stages. On December 2, 2013, petitioner filed notice of his intent to seek writs related to the state district court's order denying claim three on procedural grounds.[13] On January 22, 2014, the state district court gave petitioner until either February 22 or 28, 2014, to seek timely review in the appellate court.[14] On February 26, 2014, petitioner filed his writ with the Fifth Circuit Court of Appeal.[15] On May 23, 2014, the Fifth Circuit Court of Appeal denied petitioner's writ.[16] On June 20, 2014, petitioner filed a writ with the Louisiana Supreme Court.[17] The Louisiana Supreme Court denied relief April 17, 2015.[18]

After the state district court denied claims one and two on the merits, petitioner filed notice of his intent to seek writs on March 6, 2014.[19] On April 1, 2014, petitioner sent a letter to the district court clerk advising he had not received a disposition concerning his March notice.[20] The district court ordered on April 1, 2014, that petitioner file his writ with the Fifth Circuit "as provided by law."[21] On April 10, 2014, the clerk sent to petitioner a response to request for

---

"placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the filings were obviously placed in the mail no earlier than the date they were signed.

[11] State Rec., Vol. 3 of 8, Order dated November 14, 2013.

[12] State Rec., Vol. 3 of 8, Order dated February 20, 2014.

[13] State Rec., Vol. 3 of 8, Notice of Intent to Seek Writs signed December 2, 2013.

[14] State Rec., Vol. 3 of 8, Order dated January 22, 2014. This order is not reflected as entered on the Case Review. State Rec., Vol. 2 of 8.

[15] State Rec., Vol. 7 of 8, Application for Writ, 14 KH 154, signed February 24, 2014.

[16] State Rec., Vol. 7 of 8, 5th Cir. Opinion, 14 KH 154, dated May 23, 2014.

[17] State Rec., Vol. 8 of 8, Application for Writ, 14 KH 1372, signed June 20, 2014.

[18] State ex rel. Martin v. State, 168 So.3d 363 (La. 2015) (Mem.); State Rec. Vol. 8 of 8.

[19] State Rec., Vol. 3 of 8, Notice of Intent to Seek Writs signed March 6, 2014. The Case Review reflects that the Notice was not docketed until April 10, 2014. State Rec., Vol. 2 of 8.

[20] State Rec., Vol. 1 of 8, letter dated April 1, 2014.

[21] State Rec., Vol. 3 of 8, Order dated April 11, 2014. This order is not reflected on the Case Review. State. Rec., Vol. 2 of 8.

information and/or documents advising that an "Order ruling on Notice of Intent" was "not part of the court record."[22]  On May 20, 2014, petitioner sent a letter to the district court judge advising that the clerk's office advised him that the court had not rendered a ruling on his notice and requested the judge set a return date.[23]  On June 26, 2014, petitioner filed a second notice of intent to seek writs.[24]

On July 15, 2014, the district court entered an order but left blank the time by which petitioner should file his application for writs with the Fifth Circuit.[25]  On July 24, 2014, petitioner sought writs from the Fifth Circuit.[26]  On August 27, 2014, the Fifth Circuit Court of Appeal denied relief.[27]  On September 24, 2014, petitioner filed a writ application with the Louisiana Supreme Court.[28]  On September 11, 2015, the Louisiana Supreme Court denied relief finding "[t]here is no error in the rulings of the court below."[29]

On September 18, 2015, petitioner filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief:[30]  (1) ineffective assistance of counsel in failing to introduce into evidence at trial the surveillance video of the person the victim claimed approached him at Boomtown Casino and surveillance video of petitioner using cash to purchase items at Foot Locker; (2) ineffective assistance of counsel in failing to conduct pretrial investigation and interview Officer Tammy Dore, Detective Gary Barteet, and Stephen Charles

---

[22] State Rec., Vol. 3 of 8, Response to Request for Information and/or Documents dated April 10, 2014.
[23] State Rec., Vol. 3 of 8, letter signed May 20, 2014.
[24] State Rec., Vol. 3 of 8, Second Notice of Intent to Seek Writs signed June 26, 2014.
[25] State Rec., Vol. 3 of 8, Order dated July 15, 2014.  The Case Review does not reflect entry of this order.  State. Rec, Vol 2 of 8.
[26] State Rec., Vol. 7 of 8, Writ Action, 14 KH 566, signed July 24, 2014.
[27] State Rec., Vol. 3 of 8, 5th Cir. Opinion, 14 KH 566, dated August 27, 2014.
[28] State Rec., Vol. 8 of 8, Application for Writ, 14 KH 2029, signed September 24, 2014.
[29] State ex rel Williams v. State, 176 So. 3d 1034 (La. 2015) (Mem.), State Rec., Vol. 8 of 8.
[30] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  While petitioner signed his petition on September 16, 2015, he signed the certificate of service on September 18, 2015.  Rec. Doc. 1, pp. 15 and 31.  Petitioner candidly admits he submitted his habeas petition on September 18, 2015.  Rec. Doc. 12, p. 4.

and call them to testify at trial; and (3) ineffective assistance of counsel in denying petitioner due process during the multiple offender adjudication and allowing the state to use a defective bill to enhance his sentence. The state has filed a response arguing that the application should be dismissed as untimely.[31] Petitioner filed a reply arguing that his application is timely filed, and alternatively, equitable tolling is warranted.[32]

## Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[31] Rec. Doc. 11.
[32] Rec. Docs. 12 and 13.

In the instant case, Martin has not asserted that a government-created impediment to his filing existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his conviction became final. Thus, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final. See 2244(d)(1)(A). When a petitioner, after having his direct appeal denied by the state's highest court, timely files a petition for writ of certiorari with the United States Supreme Court, his conviction becomes final when the United States Supreme Court denies the petition for writ of certiorari. Geisberg v. Cockrell, 288 F.3d 268, 271 (5th Cir. 2002); Crutcher v. Cockrell, 301 F.3d 656, 657 (5th Cir. 2002); State v. Hofman, 768 So.2d 592, 592 (La. 2000).

Petitioner was sentenced on May 6, 2010. His direct appeal became final on October 1, 2012, when the United States Supreme Court denied his petition for certiorari. Accordingly, petitioner's period in which to file his federal application for habeas corpus relief commenced on October 1, 2012, and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one [-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state

application for habeas corpus was properly filed must be counted against the one [-]year period of limitation.

Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998); accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must " 'conform with a state's applicable procedural filing requirements,' " such as timeliness and location of filing. Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n. 4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until " 'further appellate review [is] unavailable under [Louisiana's] procedures.' ").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dilworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the

federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In petitioner's case, after 359 days, petitioner statutorily tolled his federal limitations period by filing his motion to correct illegal sentence with the state district court on September 26, 2013.[33] The state argues that the time began to run again on February 25, 2014, when petitioner failed to timely file his writ application with the Louisiana Fifth Circuit Court of Appeal on February 24, 2014, and ran for two additional days until Martin filed the writ application on February 26, 2014. Petitioner responds that the district court order gave him until February 28, 2014, by which to file his application for writ. He continues that his application filed on February 26, 2014, was timely filed and continued to toll the limitations period.

The order dated January 22, 2014, includes a handwritten return date on which the second number could easily be construed as an eight (8) rather than a two (2). Given the less than clear date on the order directing the time by which petitioner needed to file his application for writ, I cannot conclude with confidence that petitioner's application for writ filed on February 26, 2014, was not a properly filed continuation to the next step of his state proceedings that did not result in tolling for AEDPA statute of limitations purposes. Accordingly, providing petitioner with the benefit of every doubt, I will assume the application for supervisory writ was properly filed.

The time continued to be statutorily tolled through April 15, 2015, when the Louisiana Supreme Court denied relief. That said, petitioner's federal limitations period did not resume running on April 16, 2015, because he was entitled to an overlapping period of tolling. Specifically, the state district court denied relief as to claims one and two on February 20, 2014.

---

[33]Petitioner concedes that 359 days had run. Rec. Doc. 1-1, p. 9 and Doc. 12, p. 3.

Petitioner filed notice of his intent to seek writs on March 6, 2014. Petitioner normally would have had only thirty days to seek further review from the Court of Appeal. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007). Thus, generally, his time to file a writ would have expired on March 24, 2014. The state district court did not issue its order until April 1, 2014, and further, petitioner did not receive the order. After he was misadvised by the clerk of court that no such order had been entered, petitioner continued to diligently seek a return date by sending a letter to the judge and a second notice of his intent to seek writs. He filed his writ application nine days after the state district court entered its July 15, 2014 order.

It must be noted that the Fifth Circuit Court of Appeal did not deny petitioner's writ application as untimely; instead, the court expressly denied his claims on the merits stating that it found "no error in the judgment of the district court's ruling that Relator failed to support his allegations that counsel was ineffective under Strickland."[34]

In Grillette v.Warden, Winn Corr.Center, 372 F.3d 765 (5th Cir. 2004), the United States Fifth Circuit Court of Appeals faced a similar scenario and found that tolling continued uninterrupted. The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3. Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred. We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending." See [Carey v.] Saffold, 536 U.S. [214,] 226, 122 S.Ct. 2134 [ (2002) ] [ (2002) ] (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way"). Rule 4-3, however, prohibits

[34] State Rec., Vol. 7 of 8, 5th Cir. Opinion, 14 KH 566, dated August 27, 2014.

the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault." *Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.*

Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. See, e.g., Carter v. Rhea, 785 So.2d 1022, 1022 (La. Ct. App. 4th 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); Lawyer v. Succession of Kountz Through Cupit, 703 So.2d 233, 233 (La. Ct. App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); Watts v. Dorignac, 681 So.2d 955, 955 (La. Ct. App. 1st Cir. 1996) ("WRIT NOT CONSIDERED"). Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

Grillette, 372 F.3d at 775 (emphasis added).

This Court should not unilaterally ignore the presumptions employed in Grillette. Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009). Therefore, out of an abundance of caution, the Court will toll the federal limitations period in the instant case from the date the post-conviction application was filed until the date on which petitioner's application seeking review was denied by the Louisiana Supreme Court on September 11, 2015.

When petitioner's federal limitations period finally began running again on September 12, 2015, 359 days had passed and he had six days remaining. Therefore, he had until Thursday, September 17, 2015, either to file his federal application or to again toll the limitations period. Petitioner had no applications pending before the state courts during the remaining days of the limitations period. Petitioner filed the instant petition on Friday, September 18, 2015, thereby allowing 366 days to expire. It is therefore untimely under a more lenient calculation. Although petitioner's application was filed only a day late, "the magnitude of [a petitioner's] tardiness"

simply is not a proper consideration in determining the timeliness of a federal habeas application. Lookingbill v. Cockrell, 293 F.3d 256, 264 (5th Cir. 2002). As the United States Fifth Circuit Court of Appeals has explained:

> At the margins, all statutes of limitations and filing deadlines appear arbitrary. AEDPA relies on precise filing deadlines to trigger specific accrual and tolling provisions. Adjusting the deadlines by only a few days in both state and federal courts would make navigating AEDPA's timetable impossible. Such laxity would reduce predictability and would prevent us from treating the similarly situated equally. We consistently have denied tolling even where the petition was only a few days late.

Id. at 264–65 (footnote omitted).

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). Courts must consider the individual facts of each case in determining the appropriateness of equitable tolling. United States v. Patterson, 211 F.3d 927, 931 (5th Cir. 2000). The courts' inquiries should focus "on the reasons for missing the deadline rather than on the magnitude of the tardiness." Lookingbill, 293 F.3d at

264 (citing Ott, 192 F.3d at 512) (refusing equitable tolling where petitioner missed deadline by only a "few days")).

Petitioner claims that he is entitled to equitable tolling because he did not receive the Louisiana Supreme Court order denying relief until September 14, 2015, and, further, was housed in Camp J where he was locked in a cell for 23 hours a day without access to legal material. Petitioner argues that he had to rely on the assistance of offender counsel and filed his habeas petition four days later.

It is clear that a prisoner's *pro se* status does not constitute rare and exceptional circumstances warranting equitable tolling. See, e.g., Felder v. Johnson, 204 F.3d 168, 171-72 (5th Cir. 2000). Further, a four day turnaround time for notice to be given from the court to the petitioner is not an unreasonable or substantial delay. Smith v. Cain, Civ. Action No. 11-0519, 2012 WL 1698336, at *5 (E.D. La. Feb. 23, 2012), adopted, 2012 WL 1710981 (E.D. La. May 14, 2012) (seven day turnaround time for notice to be given from court to counsel and counsel to petitioner neither unreasonable nor substantial delay). Moreover, a delay in the prison internal mail-distribution system does not qualify as an exceptional circumstance. Bryant v. State of Louisiana, Civ. Action No. 06-0088, 2007 WL 2323383, at *4-5 (E.D. La. Aug. 9, 2007). Therefore, any delay petitioner experienced in receiving notice of the Louisiana Supreme Court order denying relief does not qualify petitioner for equitable tolling. Finally, Martin's 23-hour confinement and lack of access to legal material also do not constitute rare or exceptional circumstances warranting equitable tolling. Madis v. Edwards, 347 F. App'x 106, 108 (5th Cir. 2009) (finding transfers between units, separation from legal materials, and administrative segregation are not rare or exceptional circumstances meriting equitable tolling). see also Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004) ("Lockdowns and periods in which a prisoner

is separated from his legal papers are not 'exceptional circumstances' in which equitable tolling is appropriate.").  The Court is not aware of any other circumstance in this case that might warrant equitable tolling.  Therefore, there is no basis for finding that the limitations period should be equitably tolled.

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  Here, petitioner does not invoke McQuiggin.  However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned: "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' "  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred."  Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 F. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing and known at the time of petitioner's trial. That evidence is recounted in the Louisiana Fifth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> Mr. Martin waived his right to a jury, and the case proceeded before the judge on February 22, 2010, as to Count Two. At the trial, Mr. Amin Joudeh testified that as he was leaving the Boomtown Casino in Harvey, Louisiana, Mr. Martin approached him in the parking lot and asked for a cigarette. He further testified that he told Mr. Martin that he did not smoke, and thereafter got into his car and drove away. While driving home, however, Mr. Joudeh noticed he was being followed. He pulled over to the side of the road to allow the vehicle to pass. When the vehicle passed him, it pulled into the driveway of one of the homes in his neighborhood. Feeling no threat, Mr. Joudeh pulled into his own driveway and exited his vehicle. He testified that once he exited the vehicle, Mr. Martin jumped from behind a pile of dirt that was in the next door neighbor's yard, put a gun in his face, and demanded money. Mr. Joudeh gave him $520 in cash as well as his keys, which Mr. Martin also demanded. After the perpetrators left, Mr. Martin called the police to report the incident.
>
> Sgt. John Carroll, a detective in the robbery division for the Jefferson Parish Sheriff's Office, also testified at the trial. Sgt. Carroll testified that his investigation led to the arrest of Mr. Martin as well as his two co-defendants. Sgt. Carroll testified that he compiled a six-person photographic lineup in which Mr. Joudeh positively identified Mr. Martin as the person who robbed him.[35]

The foregoing "old evidence" was obviously compelling evidence of guilt, and so petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* — that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324 (emphasis added). Here, petitioner presents no new evidence whatsoever, much less any evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement"

---

[35] State Rec., Vol. 3 of 8, 5th Cir. Opinion, 14 KH 566, dated August 27, 2014.

for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than September 17, 2015, in order to be timely. His application was not filed until September 18, 2015, and, therefore, it is untimely.

Nevertheless, out of an abundance of caution, the undersigned will address the merits of petitioner's claims.

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that*

*there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

### Petitioner's Claims

Petitioner makes three claims that his trial was ineffective in failing to: (1) introduce evidence at trial of surveillance video of the person the victim claimed approached him at Boomtown Casino and surveillance video of petitioner using cash to purchase items at Foot Locker; (2) conduct pretrial investigation and interview Officer Tammy Dore, Detective Gary Barteet, and Stephen Charles and call them to testify at trial; (3) require the state to use a proper bill to enhance his sentence thereby denying petitioner due process during the multiple offender adjudication. As discussed below, these claims have no merit.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. Id. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. See Montoya v. Johnson, 226 F.3d 399, 408 (5th Cir. 2000); Jernigan v. Collins, 980

F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. See Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. See Strickland, 466 U.S. at 689; Carty v. Thaler, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must " 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694).

This standard requires a "substantial," not just "conceivable," likelihood of a different result. Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 88. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of AEDPA standards of review:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 563 U.S. at 171 (quoting Knowles v. Mirzayance, 129 S.Ct. 1411, 1413 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the Strickland standard through the "deferential lens of § 2254(d)." Id., at 172 (citing Strickland, 466 U.S. at 689 and

quoting Knowles, 129 S.Ct. at 1419 n. 2). Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591-92 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90); see also Matheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

### 1. Failure to Introduce Video Evidence

Petitioner's first claim of ineffective assistance of counsel is that his counsel failed to introduce into evidence two surveillance videos. The first video is surveillance video from Boomtown Casino and depicts a person the victim originally identified as the same person who approached him in the parking lot. The second surveillance video petitioner claims would show him purchasing items with cash at Foot Locker.

The state district court found:

> Petitioner claims that counsel was ineffective in failing to produce surveillance videos of the robbery at the casino and of the petitioner's purchase at Footlocker. As to the surveillance at the casino, as the State points out, the video is taken at night and in unclear, or "fuzzy". The victim testified that he recognized the petitioner as the person who approached him in the parking lot, and later robbed him. The victim was robbed outside of his house where there was no surveillance cameras or video. The court finds no merit to this claim, as petitioner fails to prove how counsel was deficient in not producing the video at trial, or how production of the casino video tape would have affected the outcome of the trial.

> As to the video of the petitioner at Footlocker, as the State points out, this was not an issue at trial and production of such video tape at trial would not have been relevant, as there was no evidence presented regarding someone purchasing merchandise at Footlocker. The court finds that petitioner fails to prove any deficiency in counsel's performance, or any prejudice resulting.[36]

The Fifth Circuit Court of Appeal found "no error in the district court's ruling that Relator failed to support his allegations that counsel was ineffective under Strickland. We agree with the

---

[36] State Rec., Vol. 3 of 8, Order dated February 20, 2014.

district court's ruling that Relator's claims of ineffective assistance of counsel were either without merit or speculative."[37]  The Louisiana Supreme Court denied relief finding "no error in the rulings of the courts below."[38]

Decisions regarding the presentation of evidence are inherently matters of trial strategy. Schwertz v. Cain, Civ. Action Nos. 12–1897, 12–2142, 2012 WL 5956308, at *14 (E.D. La. Nov. 13, 2012), adopted, 2012 WL 5949516 (E.D. La. Nov. 28, 2012).  The United States Supreme Court has cautioned courts not to assess counsel's decisions concerning strategy through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.

Petitioner contends the Boomtown Casino video would have shown co-defendant Jacobs following the victim as he left the casino.  He argues that the video would have undermined the victim's identification of petitioner as the person in the video as well as his testimony that the person in the video was the same person who approached him in the parking lot and later robbed him outside his home.

Whether petitioner was depicted in the Boomtown surveillance video, which showed the victim, Amin Joudeh, leaving the casino, was not an issue at trial.  Sergeant Carroll of the Jefferson Parish Sheriff's Office testified that petitioner was not depicted in any Boomtown Casino video.[39] Further, Joudeh testified that while he originally identified petitioner as the person following him in the video, the video was "fuzzy" and at trial he was no longer sure of his identification of Martin as the person in the video.[40]  The video did not show anyone making contact with Joudeh nor was

---

[37] State Rec., Vol. 3 of 8, 5th Cir. Opinion, 14 KH 566, dated August 27, 2014.
[38] Martin, 176 So. 3d at 1034; State Rec., Vol. 8 of 8.
[39] State Rec., Vol. 1 of 8, transcript of February 22, 2010, p. 21.
[40] Id., at p. 44.

there any video of Joudeh in parking lot. However, Joudeh positively identified petitioner as the robber on several occasions. Joudeh testified that the perpetrator originally approached him in the casino parking lot and asked for a cigarette and later robbed Joudeh at his home.[41] Joudeh testified that he had a clear and unobstructed view of the perpetrator's face on both occasions.[42] Joudeh identified petitioner from a photographic lineup shown to him just days after the robbery.[43] Sergeant Carroll confirmed that Joudeh identified petitioner from a photographic lineup but testified that Joudeh was not able to identify either of petitioner's co-defendants from another photographic lineup.[44] Joudeh also identified petitioner in court.[45] Joudeh testified that he was one hundred (100) percent positive of his identification of petitioner as the robber based on seeing him in the parking lot and at his home.[46]

Given the evidence presented at trial, petitioner has not demonstrated that the Boomtown Casino surveillance video was so material or potentially helpful to the defense that counsel's failure to introduce it was constitutionally deficient performance. Nor has petitioner demonstrated that there is a reasonable probability the outcome of the trial would have been different had counsel attempted to introduce the Boomtown Casino surveillance video.

Petitioner also claims that the Foot Locker video would have shown him using cash to purchase merchandise while co-defendant Jacobs utilized a stolen credit card. Petitioner fails to show the relevance of this video. While petitioner and his co-defendants had been charged with a series of robberies, the evidence at petitioner's trial related to a single robbery on February 29, 2008, during which Joudeh was robbed of $520 cash. There was no evidence presented at trial

---

[41] Id., at p. 46.
[42] Id., at pp. 27, 30.
[43] Id., at pp. 14-17, 30.
[44] Id., at pp. 14-17.
[45] Id., at 33, 45.
[46] Id., at p. 44.

relating to a stolen credit card, which belonged to a victim of a separate robbery; nor was there evidence that purchases were made at any store. Further, petitioner's use of cash to purchase merchandise did not exculpate him given that Joudeh *had been robbed of cash*. Thus, even if the Foot Locker surveillance video were somehow relevant, petitioner has not shown his counsel's performance fell below an objective standard of reasonableness as his counsel could have made a tactical decision not to present the evidence as it could well have been damaging to petitioner. Williams v. Cain, 125 F.3d 269, 278-79 (5th Cir. 1997) (stating the failure to present evidence is not deficient performance, if the attorney could have concluded "for tactical reasons, that attempting to present such evidence would be unwise.") Petitioner further fails to satisfy the second prong of Strickland in that he fails to demonstrate there is a reasonable probability the outcome of the trial would have been different had counsel attempted to introduce the video.

Petitioner has not demonstrated that the state courts' decision rejecting his ineffective assistance of counsel claims based on failure to introduce the videos was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief as to this claim.

## 2. Failure to Conduct Pretrial Investigation & Interview and Present Witnesses

Petitioner's second claim is that his counsel failed to conduct pretrial investigation, failed to interview Officer Tammy Dore, Detective Gary Barteet, and Stephen Charles, and failed to call them to testify at trial. Petitioner argues that the testimony of Dore, Barteet, and Charles would have exculpated him. He claims that Joudeh told Dore that the perpetrator was wearing black pants and a black hooded sweater and that Charles, Joudeh's neighbor, told Dore that he saw two black males parked on the street and that one of them, wearing all black, exited the vehicle. Martin argues that Barteet viewed the Boomtown Casino video and identified co-defendant Jacobs as the

person wearing black pants and a black hooded sweater and following Joudeh as he exited the casino. He further claims an investigation would have enabled counsel to "learn more about the conditions at the scene that may have affected the victim's opportunity for observation. For example, the victim testified that a 'pile of dirt' was in the yard. Stephen Charles made no mention of a 'pile of dirt' nor was he asked about it."[47]

The state district court, in denying petitioner's claims, found as follows:

> Petitioner claims that counsel was ineffective in failing to conduct a pre-trial investigation and interview Officer Dore, Det. Barteet, and Stephen Charles. The court finds this claim speculative, as petitioner does not prove what further investigation would have revealed, or how it would have changed the outcome of the trial. Petitioner fails to prove deficiency in counsel's performance, or prejudice resulting.[48]

The Fifth Circuit Court of Appeal found petitioner's ineffective assistance of counsel claims were either speculative or without merit.[49] The Louisiana Supreme Court denied relief finding "no error in the rulings of the courts below."[50]

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate

---

[47] Rec. Doc. 1-1, p. 23.
[48] State Rec., Vol. 3 of 8, Order dated February 20, 2014.
[49] State Rec., Vol. 3 of 8, 5th Cir. Opinion, 14 KH 566, dated August 27, 2014.
[50] State Rec., Vol. 8 of 8, La. Supreme Court Order dated September 11, 2015.

without adducing what the investigation would have shown and that the outcome would have been different as a result. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696).

In addition, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in federal habeas corpus review of an ineffective assistance of counsel claim, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. Day, 566 F.3d at 538. In order to demonstrate prejudice arising from failure to call witnesses, the petitioner must show that the witness would have testified at trial and that the testimony would have been favorable. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). There must be a "'reasonable probability' that the uncalled witnesses would have made [a] difference to the result." Id., at 603 (citation omitted).

Petitioner has provided no proof that his counsel failed to investigate the case. Trial counsel advised that he had been provided the discovery, had read the transcripts and police reports, and was prepared to proceed with trial.[51] Counsel's questioning of the witnesses at trial shows that he was prepared and informed. Petitioner also has presented nothing but his self-serving argument to establish that counsel did not contact the prospective witnesses. Even assuming counsel did not interview the witnesses, petitioner fails to show that Dore, Barteet and Charles would have provided any information not already included in the police reports. A petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

---

[51] State Rec., Vol. 1 of 8, transcript of February 22, 2010, p. 4.

With regard to petitioner's claim that his counsel was ineffective in failing to call Dore, Barteet and Charles to testify, petitioner fails to show that any of the witnesses were available to testify or that their testimony would have been beneficial to the defense. Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (for an ineffective assistance of counsel claim relating to failure to call witnesses, petitioner must show witnesses would have testified at trial and that the testimony would have been favorable). Nothing petitioner alleges about what the witnesses might have testified appears so crucial as to render counsel's failure to call them at trial constitutionally deficient.

Petitioner argues that Joudeh testified that the robber came out from behind a load of dirt in the neighbor's yard and that Charles could have been asked about the existence of the load of dirt. Petitioner speculates that the existence of the dirt pile could have affected Joudeh's view of the perpetrator. However, Joudeh testified that he had a clear and unobstructed view of the perpetrator both when he approached him in the parking lot and when he robbed Joudeh at his home.[52] Further, petitioner has not submitted anything to support the substance of Charles' expected testimony regarding that issue or that the testimony would have been likely to change the outcome of the trial. To the extent he claims that Barteet would have testified that it was co-defendant Jacobs seen following Joudeh in the Boomtown Casino surveillance video, his testimony would have been cumulative. A failure to present such testimony does not amount to ineffective assistance of counsel. Richards v. Quarterman, 566 F.3d 553, 568 (5th Cir. 2009); Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir. 2007) ("Counsel's decision not to present cumulative testimony does not constitute ineffective assistance.") (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984)).

---

[52] Id., at pp. 27, 30.

The fact that Jacobs was wearing black clothes and Charles saw a person wearing black clothes could hardly be considered exculpatory or impeachment evidence. Finally, testimony that there were two people in the car near Joudeh's house would also not have exculpated Martin or impeached Joudeh as Joudeh reported that there were two persons in vehicle.[53]

For the foregoing reasons, petitioner fails to show that his counsel acted in a constitutionally deficient manner by failing to call these witnesses at trial and further fails to show that the testimony would have altered the outcome of the trial. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland. Petitioner is not entitled to relief on this claim.

### 3. Failure to Challenge Bill of Information Used to Enhance his Sentence

In his final claim of ineffective assistance of counsel, petitioner contends his lawyer's performance was deficient because he failed to challenge the bill of information utilized during the multiple offender adjudication procedures to enhance his sentence. He claims that the habitual offender bill was defective in that it misstated the charge to which petitioner pled guilty as possession with the intent to distribute marijuana. Petitioner argues that the possession charge was dismissed and therefore could not be used as a basis to enhance his sentence. He explains that he pled guilty to an amended charge of attempted possession of marijuana with the intent to distribute.

The state argues that this claim is procedurally barred. For the reasons that follow, the state is correct.

The state district court found the claim was not cognizable for review in an application for post-conviction relief as it was procedurally barred.[54] The Fifth Circuit Court of Appeal, in denying petitioner's application for writ, explained as follows:

---

[53] State Rec., Vol. 3 of 8, Application for Post-Conviction Relief signed September 26, 2013, Exh. A, p. 4.
[54] State Rec., Vol. 3 of 8, Order dated November 14, 2013.

Relator, Shawn Martin, seeks review of the district court's denial of his application for post-conviction relief. Postconviction relief applications are subject to strict procedural requirements. La. C.Cr.P. art. 930.3 provides as to a petitioner in custody after sentence for conviction for an offense that relief shall be granted only on the following grounds:

(1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;

(2) The court exceeded its jurisdiction;

(3) The conviction or sentence subjected him to double jeopardy;

(4) The limitations on the institution of prosecution had expired;

(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or

(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.

(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

Relator's application for relief alleges an excessive sentence and ineffective assistance of counsel at his habitual offender adjudication. Thus, on the showing made, none of the statutory grounds for relief apply. [55]

The Louisiana Supreme Court denied relief citing La. Code Crim. P. art 930.3, State ex rel. Melinie v. State, 665 So.2d 1171 (La. 1996), State v. Cotton, 45 So.3d 1030 (La. 2010), and State v. Thomas, 19 So.3d 466 (La. 2009). [56]

The United States Fifth Circuit Court of Appeals has explained:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

---

[55] State Rec., Vol. 7 of 8, 5th Cir. Opinion, 14 KH 154, dated May 23, 2014.
[56] Martin, 168 So. 3d at 363; State Rec., Vol. 8 of 8.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, petitioner's claim that his counsel was ineffective in connection with the sentencing proceedings was denied by the state courts pursuant to La. Code Crim. P. art 930.3, Melinie, Cotton, and Thomas. All of those authorities clearly concern procedural matters: article 930.3 limits the grounds on which a prisoner may seek post-conviction relief; the Melinie decision held that article 930.3 does not allow post-conviction challenges to sentencing errors; Cotton held that article 930.3 and Melinie bar post-conviction claims alleging ineffective assistance of counsel in sentencing matters, and Thomas held that claims of excessive sentence and ineffective assistance of counsel at sentencing are not cognizable on collateral review pursuant to article 930.3, Melinie and Cotton.

Moreover, federal courts have repeatedly held that article 930.3 and the Melinie and Cotton decisions are "independent" and "adequate" state rules to support a procedural bar in federal court. See, e.g., Hull v. Stalder, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sept. 28, 2000) (per curiam) (Table, Text in Westlaw) (article 9303.3 and Melinie are "independent" and "adequate" state grounds to support a procedural bar); Reavis v. Hedgeman, Civ. Action No. 15-1982, 2015 WL 7307329, at *6-7 (E.D. La. Nov. 6, 2015) (article 930.3, Melinie, and Cotton are "independent" and "adequate"), adopted, 2015 WL 7306440 (E.D. La. June 3, 2015); Price v. Tanner, Civ. Action No. 14-1628, 2015 WL 5060237, at *4-5 (Aug. 17, 2015) (same); Williams v. Vannoy, Civ. Action No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (same);

Williams v. Strain, Civ. Action No. 13-2998, 2014 WL 5305634, at *5-6 (E.D. La. Oct. 15, 2014) (same); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (same); Evans v. Cain, No. 11-2584, 2012 WL 2565008, at *6-8 (E.D. La. Mar. 14, 2012) (same), adopted, 2012 WL 2565001 (E.D. La. July 2, 2012).

Where, as here, the procedural rules invoked by the state courts are "independent" and "adequate, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). However, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner makes no attempt to establish "cause" for the procedural default of this claim. Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." See Bagwell v.Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998). However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were

erroneously sentenced.  Id. at 265-66.  The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received."  Id. at 264.  However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit.  Dretke v. Haley, 541 U.S. 386 (2004).  In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors.  Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not shown that he was legally ineligible for the sentence imposed.[57] Accordingly, for all of the foregoing reasons, the undersigned finds that petitioner's claim that his counsel was ineffective in connection with the sentencing proceedings is procedurally barred from federal review.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Shawn Martin be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[57] Petitioner's claim that the habitual offender bill was defective because it included the wrong offense is meritless. The habitual offender bill clearly provides that while petitioner was originally charged with possession with intent to distribute marijuana, he pled guilty to attempted possession with intent to distribute marijuana in violation of La. Rev. Stat. §§ 40.979 and 40.966(A) and was sentenced to three years hard labor.

result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  1st  day of May, 2017.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**